UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VICKEY LEE MILES, | : | Case No. 3:20-cv-410 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF SOCIAL SECURTY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Vickey Lee Miles brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income (SSI). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. # 7).

## I.  Background

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

1

In the present case, Plaintiff applied for benefits in early 2018, alleging disability due to a stroke, hip problems, and memory loss. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Laura Chess on October 9, 2019. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 31, 2018, the alleged onset date.

Step 2: Plaintiff has the following severe impairments: degenerative changes of the spine; degenerative changes of the bilateral hips; hypertension; hepatitis C; status post stroke; cocaine abuse; heroin abuse; depressive disorder; and borderline intellectual functioning.

Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "sedentary work as defined in 20 CFR 416.967(a) except [Plaintiff] can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] can stand and/or walk for 2 hours in an 8-hour workday. [Plaintiff] can sit for at least 6 hours in an 8-hour workday. [Plaintiff] must use a cane for ambulation. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally climb ramps and stairs. [Plaintiff] can occasionally balance, stoop, and kneel. [Plaintiff] can never crouch or crawl. [Plaintiff] can tolerate occasional exposure to vibration. [Plaintiff] can never work at unprotected heights or in the vicinity of uncovered, unguarded moving machinery. [Plaintiff] cannot perform commercial driving. [Plaintiff] can occasionally interact with coworkers, supervisors, and the public. [Plaintiff] can understand, remember, and carry out simple instructions. [Plaintiff] can perform simple, routine, repetitive tasks. [Plaintiff] can make simple work-related decisions and can tolerate occasional changes in a routine work setting."

> > Plaintiff is unable to perform her past relevant work as a production assembler or a forklift operator.
>
> Step 5: Plaintiff can perform a significant number of jobs that exists in the national economy such as a charge account clerk, table worker, or bench assembler.

(Doc. # 7-2, *PageID* #s 50-61). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since January 31, 2018. *Id.* at 61.

The evidence of record is adequately summarized in ALJ Chess's decision (Doc. #7-2, *PageID* #s 54-59), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision

of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

Plaintiff asserts that the ALJ's RFC determination was not substantially supported by the record. (Doc. #8). Specifically, Plaintiff argues that ALJ Chess improperly evaluated medical opinions from the state agency reviewing psychologists, Drs. Cynthia Waggoner and Paul Tangeman; and the consulting examining psychologist, Dr. Giovanni Bonds. *Id*. at 1160-66. In contrast, the Commissioner maintains that the ALJ properly weighed the medical source opinions and that substantial evidence supports the ALJ's decision. (Doc. #11)

#### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 416.920c, 416.927. Because Plaintiff's claim for disability was filed in 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not

inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017.  20 C.F.R. § 416.920c.  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 416.920c(a).  Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 416.920c(c).  Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors.  § 416.920c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 416.920c(c)(1).  Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 416.920c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of

[her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id*.

In this case, Plaintiff's mental health record was reviewed initially by Cynthia Waggoner, Psy.D, on June 27, 2018, and on reconsideration by Paul Tangeman, Ph.D., on August 19, 2018. (Doc. #7-3, *PageID* #s 98-113, 117-29). Both doctors found that Plaintiff was moderately limited in her ability to carry out detailed instructions as well as in her ability to maintain attention and concentration for extended periods. *Id*. at 112, 127-28. They opined that her ability to complete a normal workday and workweek without interruptions from her mental impairments would be moderately limited, explaining that she appeared tense during her consultative examination and reported anxiety. *Id*. at 112, 128. Drs. Waggoner and Tangeman believed that Plaintiff would be able to perform two-to-three step repetitive tasks that were short cycle in nature and without strict production quotas. *Id*. As for Plaintiff's social limitations, they concurred that she was moderately limited in her ability to interact appropriately with the general public, noting that her isolating behaviors and depressive symptoms would limit her to interacting "occasionally and

superficially with co-workers, supervisors, and [the] general public." *Id*. at 113, 128-29. Finally, they found that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and, therefore, should be exposed to changes gradually. *Id.* at 113, 129.

In reviewing this opinion evidence, ALJ Chess found it to be "generally persuasive as it [is] mostly consistent with the evidence within the record." (Doc. #7-2, *PageID* #58). Nonetheless, she found portions of these reports to be unpersuasive as they were "generally vague." *Id*. She explained that "[p]hrases such as 'short cycle tasks with no production quotas', 'superficial interaction', and '[plaintiff] should be exposed to changes gradually' are vague and not defined by either vocational or functional terms set forth in the Dictionary of Occupational Titles." *Id*. According to ALJ Chess, such phrases fail to "adequately describe limitations associated with [plaintiff's] ability to do work like activities." *Id*.

Plaintiff's principal assignment of error rests with ALJ Chess's failure to follow the new regulations in her consideration of the opinions of Drs. Waggoner and Tangeman. (Doc. #8, *PageID* #s 1160-64). Specifically, she points out that the new regulations require the ALJ to articulate her consideration of the supportability and consistency factors for each medical opinion, and that ALJ Chess failed to explain her analysis of the supportability factor when analyzing the opinions of Drs. Waggoner and Tangeman. *Id*. at 1161. In this respect, Plaintiff claims that ALJ Chess reversibly erred by discounting these medical opinions and excluding certain functional limitations, not because they were unsupported or not consistent with the other evidence of record, but because they were "generally vague" and not otherwise "defined by either vocational or

functional terms set forth in the Dictionary of Occupational Titles." *Id*. at 1161-64 (quoting Doc. #7-2, *PageID* #58).

In response, the Commissioner argues that ALJ Chess did satisfy the mandate to discuss her analysis of the supportability factor by virtue of her earlier recitation of Plaintiff's entire medical record and identification of instances where the medical records did not support a finding of disability. (Doc. #11, *PageID* #s 1179-80). According to the Commissioner, even if ALJ Chess failed to discuss the supportability factor, she "otherwise met the goal of the regulation" by using her review of the evidence to inform a conclusion as to "whether the evidence [Drs. Waggoner and Tangeman] reviewed could actually support [their] conclusions." *Id*. (citing *Watters v. Comm'r of Soc. Sec*., 530 F. App'x 419, 423 (6th Cir. 2013) and *Vaughn v. Comm'r of Soc. Sec*., 20-1119, 2021 WL 3056108 at *12 (W.D. Tenn. July 20, 2021)).

The Commissioner's defense of the ALJ's decision falls short in a number of respects. As an initial matter, the plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 416.920c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 416.920c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether she needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth her

rationale on what are deemed to be the two most important factors—supportability and consistency. *See id*.

Here, ALJ Chess found the medical opinions of Drs. Waggoner and Tangeman "generally persuasive" but failed to explain how she considered the factor of supportability when reaching this conclusion. As a result, it is unclear why she accepted certain findings and rejected others.

Additionally, the Commissioner's *post hoc* rationalization of how ALJ Chess could have applied the factors to each medical opinion based on her earlier recitation of Plaintiff's medical opinion does not cure this deficiency. The regulations do not call for the reviewing court or the Commissioner to comb through the record after the ALJ has rendered her decision and "imagine manifold ways in which the factors could have been applied to the evidence that was presented." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). Instead, it is the obligation of the ALJ "in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id*. As such, by not explaining how she considered the supportability factor when evaluating the persuasiveness of Drs. Waggoner's and Tangeman's medical opinions, ALJ Chess failed to meet the minimum levels of articulation required by the regulations, thus frustrating the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Warren I*, 2021 WL 860506, at *8.

ALJ Chess's failure to "show her work" in accordance with the regulations is particularly salient with regard to her decision to exclude the restriction set forth by Drs. Waggoner and Tangeman that Plaintiff be limited to only superficial interactions with co-workers, supervisors,

and the general public. At the hearing, the vocational expert testified that being unable to appropriately respond to instruction and supervisor criticism, which the vocational expert considered to be more than superficial interaction, would be work preclusive. (Doc. #7-2, *PageID* #s 91-92). Despite this testimony and the physicians' opinion that Plaintiff be limited to only occasional and superficial interactions, ALJ Chess chose to only incorporate the aspect of occasional interaction and to exclude the limitation pertaining to superficial interaction. *Id*. at 58. In reaching this conclusion, she did not cite to any medical evidence of record or explain why this limitation was not consistent with or supported by the other evidence of record. Rather, she decided to not include the limitation of superficial interaction because she found it to be "vague" and "not defined by either vocational or functional terms set forth in the Dictionary of Occupational Titles or adequately describe limitations associated with [Plaintiff's] ability to do work like activities." *Id*.

Contrary to ALJ Chess's opinion, "superficial interaction" is a well-recognized work-related limitation. Indeed, courts have routinely recognized the distinction between limiting the *quantity* of time spent with an individual with the limitation relating to the *quality* of the interactions—including a limitation to "superficial" interaction. *See*, *e.g., Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to [the medical] opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.*), report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) (Sargus,

D.J.) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added)) (quoting *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)).

Accordingly, ALJ Chess's position that such a limitation, as reflected in the opinions of Drs. Waggoner and Tangeman, is vague and fails to "adequately describe limitations associated with [Plaintiff's] ability to do work like activities" is unavailing and further supports remanding this case. *See Hurley v. Berryhill*, No. 1:17-CV-421, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (holding that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit the plaintiff to occasional rather than superficial interactions) (internal citation omitted); *Cote v. Colvin*, No. 16-cv-57, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

11

rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-

step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Vickey L. Miles was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the Court's docket.

October 21, 2021                                *s/Peter B. Silvain, Jr.*
                                                                Peter B. Silvain, Jr.
                                                                United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).